OPINION
{¶ 1} Joseph Scott ("Scott") was found guilty by a jury in the Montgomery County Court of Common Pleas of domestic violence against Danny Wilson ("Wilson"), in violation of R.C. 2919.25(A), a felony of the third degree. He was acquitted of a second count of domestic violence against Bradley Scott. Scott was sentenced to four years of imprisonment. He appeals from his conviction, raising three assignments of error.
 {¶ 2} I. "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S RULE 29 MOTION. THE EVIDENCE PRESENTED BY THE STATE WAS NOT SUFFICIENT TO JUSTIFY DENIAL OF THE MOTION."
 {¶ 3} II. "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE TRIAL COURT DECISION SHOULD BE REVERSED."
 {¶ 4} In his first and second assignments of error, Scott claims that his conviction was based on insufficient evidence and was against the manifest weight of the evidence. Due to the interrelatedness of these assignments of error, they will be treated together.
 {¶ 5} Criminal Rule 29(A) provides that the trial court shall enter a judgment of acquittal on one or more offenses charged in the indictment if the evidence is insufficient to sustain a conviction of such offense or offenses. "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, citing Black's Law Dictionary (6th Ed. 1990) 1433. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis,79 Ohio St.3d 421, 430, 1997-Ohio-372, 683 N.E.2d 1096, citing Jacksonv. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d. 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 6} In contrast, when a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin,20 Ohio App.3d at 175.
 {¶ 7} According to the state's evidence, on September 6, 2004, Wilson, the victim, was living at 106 South Main Street in Union, Ohio, with his daughter, Dana; his son-in-law, defendant Joseph Scott; his nine-year old granddaughter, Cara Jo; and his thirteen-year old grandson, Bradley. Wilson was recovering from liver transplant surgery, which occurred on April 22, 2004.
 {¶ 8} During the day on September 6, 2004, Bradley was home with friends while his parents had gone out. At some point, Bradley left with his friends and went to a friend's house. Bradley returned home shortly after 9:00 p.m. Upon returning home, Bradley began to argue with his mother about coming home too late, a rocking chair in the living room that had been broken, and "a mess that [he] had left." About five minutes later, Scott came into the living room and began arguing with Bradley about the rocking chair and his arguing with his mother. Scott repeatedly poked Bradley and then grabbed Bradley by the shirt and pulled him from his chair. Bradley threw a cup of soda at him. Scott picked up the rocking chair and slammed it down several times, breaking the chair. He also threw a piece of the broken chair against the wall. Bradley was pushed back into a corner by Scott's actions. Bradley originally told police officers that Scott had then grabbed him by the neck. At trial, Bradley denied that Scott had subsequently touched him.
 {¶ 9} During the altercation between Bradley and his parents, Wilson was asleep upstairs. He was awakened by a loud noise in the house and soon heard Cara screaming and calling for him. Wilson met Cara at the top of the steps. Cara told Wilson that Scott was "beating Bubby again." Wilson came downstairs and saw Bradley with his hair "all messed up" and his face red. He also saw a smashed chair. Wilson went to the telephone to call the police. Scott, however, "jerked" the phone out of his hand. Wilson then decided to go to the Sunoco gas station across the street to call the police. As Wilson headed out of the door, Scott grabbed his shirt and ripped it. Wilson called the police from the gas station and returned to the house. When Wilson was on the sidewalk approximately twenty feet from the door, Scott ran out the house toward him, screamed "you douche bag ho," grabbed Wilson by the shirt, ripped his shirt, and threw Wilson to the ground. Two employees from the gas station witnessed Scott throw punches at Wilson.
 {¶ 10} Based on the evidence presented at trial, we have little difficulty finding sufficient evidence to support Scott's conviction. R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." "Family or household member" includes a parent of the spouse of the offender. R.C. 2919.25(F)(1)(a)(iii). Here, Wilson, Scott's father-in-law, testified that Scott grabbed his shirt and ripped it as he headed to the gas station. Wilson testified that, upon his return, Scott grabbed him and threw him to the ground. The state presented evidence that Wilson had told the police that Scott had hit him during this encounter. Moreover, Jeconiah Fox and Thomas Moody, two employees at the Sunoco station, both testified that they saw Scott run out of the house, yell at Wilson, and hit Wilson more than once. Wilson and Fox both testified that Wilson fell to the ground during this altercation. Wilson testified that he scraped his elbows and his knees. Finally, the state presented evidence that Scott had been convicted of domestic violence on two prior occasions. See R.C. 2919.25(D)(4). Based on this testimony, the state presented sufficient evidence that Scott had knowingly caused or attempted to cause physical harm to a family or household member, i.e., his father-in-law, a third degree felony.
 {¶ 11} Scott also claims that his conviction was against the manifest weight of the evidence. In support of his argument, Scott asserts that Wilson's testimony was inconsistent as to whether he had been hit by Scott and as to the injuries that he had suffered. Scott further notes that Wilson did not get along with Scott and thought that Scott was using his daughter. In addition, Scott contends that the Sunoco employees' testimony was not credible, because they were standing approximately 100 yards from the altercation between Wilson and Scott, it was dark, and they were across the street.
 {¶ 12} Upon review of the record, we cannot conclude that the jury clearly lost its way when it convicted Scott of domestic violence. Although Wilson's testimony and his initial statement to the police differed as to whether Scott had hit him, Fox and Moody both testified that Scott had thrown punches at Wilson upon his return to the house. Moreover, although Fox and Moody were a distance from the altercation, both testified that their view was unobstructed and that they did not have difficulty seeing what had occurred. Moody also testified that he did not witness Wilson throw himself down to the pavement. Based on this testimony, the jury could have reasonably credited the testimony of Fox and Moody and concluded that Scott had knowingly hit Wilson, causing him to fall to the ground and receive minor injuries. The jury also could have reasonably rejected Scott's assertion that Wilson had thrown himself to the ground in order to cause legal trouble for Scott. Accordingly, upon review of the record, Scott's conviction was not against the manifest weight of the evidence.
 {¶ 13} The first and second assignments of error are overruled.
 {¶ 14} III. "THE TRIAL COURT ERRED IN FAILING TO RESPOND TO DEFENDANT'S MOTION TO WAIVE A JURY TRIAL ON THE ELEMENT OF THE DEFENDANT'S PRIOR CONVICTIONS."
 {¶ 15} In his third assignment of error, Scott claims that the trial court erred when it overruled his motion to waive a jury trial on the element of his prior convictions for domestic violence.[1] Scott asserts, citing Evid.R. 403(A), that the trial court should have permitted him to waive a jury trial regarding his prior convictions in order to avoid any undue prejudice.
 {¶ 16} R.C 2945.75(A)(1) provides: "When the presence of one or more additional elements makes an offense one of more serious degree: (1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise, such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense." Thus, "where the existence of a prior conviction enhances the degree of a subsequent offense, it is an essential element of that offense that the state must prove beyond a reasonable doubt." See State v. Nievas (1997), 121 Ohio App.3d 451,455, 700 N.E.2d 339, citing State v. Allen (1987), 29 Ohio St.3d 53, 54,506 N.E.2d 199, 200-201, and State v. Ireson (1991), 72 Ohio App.3d 235,239, 594 N.E.2d 165, 167-168. R.C. 2945.75(B) holds that whenever it is necessary to prove a prior conviction, the State may do so by introducing a "certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar."
 {¶ 17} In the present case, the state had the burden of proving that Scott had twice previously pleaded guilty to or been convicted of domestic violence in order to increase the degree of seriousness of the instant domestic violence charge to a third degree felony. R.C.2919.25(D)(4). At trial, Wilson and Bradley testified that Scott had at least two prior convictions for domestic violence. The state also presented the testimony of Lietutenant Darren Goudy of the Union Police Department, who testified that he confirmed Scott's prior convictions for domestic violence. Through Goudy, the state presented copies of the termination entries for those convictions. Thus, the state introduced the necessary evidence to establish an essential element of the substantive offense.
 {¶ 18} Scott claims that the trial court should have permitted him to waive his right to a jury trial solely on the issue of his prior convictions. As recognized by his trial counsel, we have repeatedly stated that where the prior conviction was an essential element of the case, that element cannot be bifurcated from the other elements of the subsequent offense. State v. Kisseberth, Montgomery App. No. 20500,2005-Ohio-3059, ¶ 28; State v. Smith, Montgomery App. No. 18654, 2001-Ohio-1396; State v. Lenoir (Sept. 12, 1997), Montgomery App. No. 15469. Moreover, the trial court is not required to grant a defendant's request to stipulate to the prior conviction. Smith, supra; Kisseberth at ¶ 28 ("It is within a court's discretion to allow or disallow a defendant to establish an element of an offense by stipulating to a prior offense.").
 {¶ 19} We find no error in the trial court's denial of Scott's request to waive a jury trial as to his prior convictions. As stated supra, the state was required to introduce evidence of Scott's prior convictions in order to elevate the offense to a third degree felony. Moreover, the court gave a limiting instruction to the jury regarding how this evidence was to be considered. It stated:
 {¶ 20} "The evidence of the defendant's two prior convictions for domestic violence was admitted because it was one of the elements of each of the offenses as charged in the indictment. As such, you may consider those convictions to support that element of the offense. However, you may not consider the prior convictions as evidence that the defendant acted in conformity with that manner of conduct on September 6th, 2004."
 {¶ 21} The court's limiting instruction "play[ed] an important role in counteracting the inevitable prejudice arising from the admission of evidence of a prior conviction." Kisseberth at ¶ 29. We thus conclude that the trial court did not err when it permitted the state to introduce evidence of Scott's prior convictions for domestic violence and overruled Scott's motion to waive a jury trial on that element.
 {¶ 22} The third assignment of error is overruled.
 {¶ 23} The judgment of the trial court will be affirmed.
 . . . . . . . . . .
Fain, J. and Donovan, J., concur.
(Hon. Frederick N. Young retired from the Second District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] Scott's third assignment of error states that the trial court erred in failing to rule on his motion. However, both parties acknowledge that Scott renewed his motion at trial and the court overruled his motion at that time. Accordingly, we construe Scott's third assignment of error to be that the trial court erred in overruling his motion.